

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,                         13 Cr. 521 (LTS)

     - against -

JOSEPH HUNTER,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MEMORANDUM OF LAW
IN SUPPORT OF
<u>PRETRIAL MOTIONS FOR DEFENDANT JOSEPH HUNTER</u>

<u>Preliminary Statement</u>

     This memorandum of law is respectfully submitted in support of the Notice of Motion of

JOSEPH HUNTER submitted herewith, seeking various forms of relief.

**STATEMENT OF FACTS**

     Mr. Hunter is charged with conspiracy to distribute cocaine, conspiracy to murder a law

enforcement officer and conspiracy to prevent communication to a law enforcement officer. Mr.

Hunter faces a sentence of mandatory life. It is clear that the Government will rely on the

testimony of one     in support of their case. Mr.     is a     with     citizenship. He also

now has     citizenship. Based on our investigation, Mr.     was born and raised in     . Mr.

     has both legitimate and illegitimate business interests. Mr.     was my client's boss in     and

the     . Mr.     hired my client to provide him with a private security team for himself and

his business interests all over the world. My client worked for Mr.     during the time of this

conspiracy. We have reason to believe Mr.        is now cooperating with the Government. We believe Mr.        used force threats and intimidation against Mr. Hunter at almost every stage of their association together.        was involved in international narcotics trafficking, illegal firearms trafficking, the raising of private militias to destabilize regimes, bribery of government officials, pornography, illegal trafficking of prescription pills and murder.  Mr.        murdered at least two (2) former associates because they did not follow through with his orders or he believed that they stole from him. He also had at least one (1) person people falsely accused and prosecuted in the         because they had a falling out of some kind.

Mr.        was arrested on or about September of      and started cooperating with the Government.[1]  The DEA used Mr.        as part of their sting operation.[2]  He called Mr. Hunter between      and 20xx.[3]  He was used to introduce Mr. Hunter to the confidential informants used by the DEA to pose as members of the Columbian Cartel. Mr.        threatened Mr. Hunter with death because things went wrong on a gold deal in      .[4]  Mr.        threatened Mr. Hunter's family with death because things went wrong during the same deal.[5]  Mr.        confessed to him that he murdered two (2) associates because of various problems that he had with him.[6]  The Government must have been aware of these matters when they debriefed Mr.        yet they still

---

[1]Exhibit A, page 6. (To Be filed under seal)

[2]Exhibit A, page 6.

[3]Exhibit A, page 7.

[4]Hunter Declaration, page 2.

[5]Hunter Declaration, page 2.

[6]Hunter Declaration, page 2.

2

used him to "set up" Mr. Hunter in this operation. This is clearly outrageous Government conduct. What choice did Mr. Hunter have? The use of informers and the like is widespread in the federal courts. However, to use a former boss who previously threatened the subject with death, who has killed others associate and who clearly communicated this to the subject "shocks the conscious".

## POINT I
## THE ITEM SEIZED FROM THE DEFENDANT'S HOME MUST BE SUPPRESSED

A valid search warrant may only issue upon probable cause.[7]  Defendants are entitled to a *Franks* hearing to examine the truthfulness of statements in a search warrant affidavit if they 1. Make a substantive preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included in the affidavit in the warrant affidavit and 2. The allegedly false statement is necessary for the finding of probable cause.[8]

In order to determine if the false information was necessary to the issuing judges probable cause determination (i.e. "material") "a court should disregard the allegedly false statements and determine whether the remaining parts of the affidavit would support probable cause to issue the warrant." If the corrected affidavit supports probable cause the inaccuracies were not material to the probable cause determination and suppression is inappropriate.[9]

In the case at bar, the Drug Enforcement Administration (DEA), through Special Agent

---

[7] *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *U.S. v. Dewy*, 489 F.Supp2d 351 (S.D.N.Y. 2007); *Rule 41 Federal Rules of Criminal Procedure*.

[8] *Franks v. Delaware*, 438 U.S. 154 (1978); *Dewey, supra*.

[9] *U.S. v. Canfield*, 212 F.3d 713 (2nd Cir. 2000); *U.S. Cores*, 419 F.3d 151 (2nd Cir. 2005).

submitted an affidavit in support of a request for a search warrant, dated January x, 20xx.[10]
The search warrant was signed the same day by the Hon.      .[11]   The affidavit was misleading
and false on a number of fronts. First, the affidavit says that Hunter met with others at the
direction of      .[12]   Mr.      said that he wanted Mr. Hunter to "meet his South American
partners".[13]   The affidavit fails to mention that Mr. Hunter was not told that these persons (later
referred to as CS-1 and CS 2) were purported members of Columbian Drug Cartel. Mr. Hunter
was only informed of this fact at his first face to face meeting with CS-1 and CS-2. Second, the
affidavit references the fact that Hunter was gathering resumes for      for the security team.[14]
In fact, every single resume collected by Mr. Hunter was collected by an associate Mr.      ,
named      and given to Hunter. This associate is not mentioned in any way in the affidavit. Mr.
Hunter played no role in gathering the resumes. Third, the affidavit fails to mention that during
the communication between Mr. Hunter and Mr.      , Mr.      rejected every applicant that was
former law enforcement officer. This illustrates the control that the DEA exerted throughout their
handling of Mr.      . They gathered who they wanted and let go who they didn't want. Fourth,
the affidavit set up video surveillance of the "Phuket House" by paying Thai law enforcement.[15]

---

[10]Exhibit A, page 1.

[11]Exhibit A, page 1.

[12]Exhibit A, page 7.

[13]Exhibit A, page 8.

[14]Exhibit A, page 7.

[15]Exhibit A, page 10.

Thai law enforcement set up the cameras pursuant to Thai law.[16]  The defense has consulted Thai attorneys and was instructed that non Thai's cannot own property in Thailand.          is not Thai. He was born in         , grew up in          and has          citizenship. He has no legal authority to purchase land in Thailand. Therefore, his consent to allow the videos is illegal under Thai law. In the alternative, Thai law allows for a search if it is authorized by a judge. Lastly, the entire operation with Thai law enforcement has to be explicitly authorized by the Thai attorney General. No such judicial or Attorney General authority is referenced in the affidavit. The relevance for our purposes, under the Fourth Amendment, is that fact that the affidavit is false and misleading. Lastly, the affidavit neglects to mention that Mr.          has threatened Mr. Hunter, killed several of his associates in the past for disobeying orders or for stealing from him and has arranged for at least one of his associates to be falsely charged for a crime in          .

The defense argues that these six (6) misstatements and omissions are material under *Canfield.* This affidavit portrays Mr. Hunter as operational leader of this enterprise which is untrue. He did not procure the resumes. He did not make the decisions as to who was in and who was out of the group. This affidavit says that the setting up of the videos at the "Phuket House" was lawful and it was not. There is no proof that          owned the property nor proof that the videos were authorized by Thai authorities. Finally, the affidavit fails to mention Mr.          violent threats to Mr. Hunter and other associates. This was certainly the driving force behind Mr. Hunter's actions. Taking all these matters into account, the remaining parts of the affidavit are insufficient to make out probable  cause under *Canfield.*

**POINT II**

---

[16]Exhibit A, page 10.

5

### HUNTER SHOULD RECEIVE A SEPARATE TRIAL FROM CO DEFENDANT VAMVAKIAS

Under Rule 8 of the Federal Rules of Criminal Procedure (FRCP), the government may try similarly situated defendant's jointly.  However, if a defendant will be prejudiced by a joint trial, a district court may order separate trials for that defendant. Rule14(a) FRCP. The United States supreme Court addressed the issues of separate trial in the case of *Bruton*.[17]  In *Bruton,* the petitioner and one Evans were tried jointly for robbing a post office. Evans made a confession implicating himself and the petitioner in the robbery. At trial, the district court admitted the statement in evidence over the objection of the petitioner and instructed the jury that the confession was inadmissible against the petitioner and should be disregarded. Both defendants were convicted. On appeal the Eight (8th) Circuit, reversed the conviction of Evans because it held that his confession was inadmissible against him and remanded the case for a new trial against  Evans.  Evans was subsequently acquitted. However, the Court of Appeals held that the statement against petitioner was admissible citing the case of *Delli Paoli v. United States*, 352 U.S. 232 (1957). In *Delli Paoli*, the United States Supreme Court held that it was , "reasonably possible for the jury to follow" instructions to disregard the one co-defendant's confession implicating another co-defendant.  In *Bruton*, the United States Supreme Court overruled *Delli Paoli*, at the urging of the government, holding that Evan's confession in the joint trial violated petitioner's right of cross examination under the Confrontation Clause of the Sixth (6th) Amendment.

In the case at bar, co defendant Timothy Vamvakias made post arrest statements to the

---

[17]*Bruton v. United States*, 391 U.S. 123 (1968).

DEA upon his arrest on September 26, 2013 in Liberia..[18] The statement was memorialized in writing by the DEA.[19] The statement contains a number of statements concerning Mr. Vamvakias, Mr. Hunter and Mr.          . The statement implicates Mr. Hunter in a number of crimes including the instant offense. It would be prejudicial to admit these statements in a joint trial involving Mr. Hunter and Mr. Vamvakias. In such a scenario, Mr. Hunter would not have an opportunity to cross examine Mr. Vamvakias should he exercise his right to remain silent and not testify at trial. Mr. Hunter moves for a separate trial from Mr. Vamvakias because to allow a joint trial would violate Mr. Hunter's right of confrontation under the Sixth amendment.

## POINT III

## THE INDICTMENT SHOULD BE DISMISSED BASED ON OUTRAGEOUS GOVERNMENT CONDUCT

"We may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process would absolutely bar the government from invoking judicial process to obtain a conviction."[20] The Due Process Clause of the Fifth Amendment guarantees that "no person shall...be deprived of life liberty or property without due process of law."[21] The Courts may dismiss an indictment based on outrageous government conduct.[22]

---

[18]Exhibit B. (To be filed under seal).

[19]Exhibit B.

[20]*United States v. Russell*, 411 U.S. 423 (1973).

[21]*Russell, supra.*

[22]*Russell, supra*; *United States v. Cromitie*, 727 F. 3d 194 (2nd Cir. 2013); *Hampton v. United States*, 425 U.S. 484 (1976); *United States v. Al Kassar*, 660 F.3d 108 (2nd Cir. 2011); *United States v. Rahman*, 189 F.3d 88 (2nd Cir. 1999).

"Whether investigative conduct violates a defendant's right to due process cannot depend on the degree to which the government action was responsible for inducing the defendant to break the law. Rather, the existence of a due process violation must turn on whether the governmental conduct, standing alone, is so offensive that it "shocks the conscious' regardless of the extent to which it led the defendant to commit his crime".[23]

The defense argues that the DEA's use of        against Mr. Hunter "shocks the conscious" cite. Mr.        in one sense is no different that average cooperator. Law enforcement use cooperators to investigate the criminal activities of others. It is often inconsequential whether the informant is the boss, an associate or a low level member of an enterprise. So long as the information is both truthful and useful. This case is different Mr.        literally killed and threatened his associates with the full knowledge of his other associates. He threatened Mr. Hunter and his family with death. How then can law enforcement use this man to engage the same person as part of a reverse sting operation? What choice did Mr. Hunter have? The answer is death, death of a family member or continued membership in the group. Mr.        is wealthy and has associates all of the world. He bragged about having bribed people in governments all over the world including the US Consulate in        . Under what circumstances could Mr. Hunter have refused Mr.        ? Law enforcement has the legal authority and the right to use informants. However, the use of        to ensnare Joseph Manuel Hunter was wrong. This indictment needs to be dismissed.

---

[23]*Cromitie, supra*, citing *United States v. Chin*, 934 F.2d 393 (2nd Cir. 1991).

**CONCLUSION**

For all the reasons stated above, the defense requests that the motion be granted in its

entirety or in the alternative the appropriate hearing be ordered to resolve any outstanding legal

or factual issues.

Dated: New York, New York
January 12, 2015


Respectfully submitted,


 s/Marlon G. Kirton
MARLON G. KIRTON, ESQ.
Counsel for JOSEPH HUNTER
230 Park Ave., Ste. 1000
New York, New York 10169
(646) 435- 5519