IAA6HUNC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

     v.                            18 CR 576(PGG)

JOSEPH MANUEL HUNTER,

          Defendant.

------------------------------x

                                      New York, N.Y.
                                      October 10, 2018
                                      12:00 noon

Before:

                   HON. RONNIE ABRAMS,

                            District Judge

                     APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
REBEKAH DONALESKI
     Assistant United States Attorney

ARNOLD J. LEVINE, ESQ.
     Attorney for Defendant

1         (In open court; case called)
2         THE DEPUTY CLERK: Counsel, please state your name for
3    the record.
4         MS. DONALESKI: Good afternoon, your Honor. Rebekah
5    Donaleski for the government.
6         THE COURT: Good afternoon.
7         MR. LEVINE: Good afternoon, your Honor. Arnold
8    Levine for Mr. Hunter.
9         THE COURT: Good afternoon.
10        Good afternoon to you, Mr. Hunter.
11        We're here today because I received a letter from Mr.
12   Levine indicating that Mr. Hunter wanted to be appointed
13   another attorney. I will note for the record that I have
14   appointed two attorneys for Mr. Hunter. He initially had
15   Marlin Kirton and I replaced Mr. Kirton with Cesar de Castro on
16   November 3rd, 2017. And then after the trial on July 26th, I
17   appointed Mr. Levine to represent Mr. Hunter in place of Mr. de
18   Castro.
19        Mr. Gerschwer is here today from the CJA panel. I
20   just wanted to note for the record Mr. Gerschwer and I used to
21   work together in the U.S. Attorney's Office and we have known
22   each other for 20 years, but I have not seen him recently. I
23   did want to disclose that on the record.
24        Mr. Levine, why don't you tell me where we are, and I
25   am happy to hear from Mr. Hunter as well.

1     MR. LEVINE:  Judge, I received an email from
2  Mr. Hunter on Monday I think it was, which is the same day I
3  sent the letter to the Court.  Monday evening I think he
4  emailed me saying, I should not come see him and he wanted me
5  to schedule a change of counsel and that he wanted me to get
6  basically any due dates suspended until then.
7     THE COURT:  I will also note for the record that I
8  have pending before me a Rule 2933 motion based on
9  jurisdictional grounds from Mr. Hunter that Mr. de Castro filed
10 and I did set that date for any supplemental filings.
11     Mr. Hunter, do you want to be heard at all?
12     THE DEFENDANT:  Yes, ma'am.
13     THE COURT:  Go ahead.
14     Mr. Levine, can you move the microphone so Mr. Hunter
15 can be heard, please.
16     THE DEFENDANT:  Approximately 45 weeks ago, I asked
17 Mr. Levine to come and see me because I had several issues that
18 needed to be discussed before -- I believe there is a 12
19 October suspense date.  He didn't answer my email.  Eventually
20 my family contacted him I believe approximately two weeks ago
21 and he stated he was in trial.  The trial was expected to be
22 over last Monday.  Last Monday came and I hadn't heard from him
23 and he hadn't come to see me and I am -- I believe there is a
24 suspense date of this Friday.  That is why I asked for a new
25 attorney.

1	THE COURT:  Mr. Hunter, if I put off the dates of that
2	filing and have Mr. Levine ensure that he comes to see you,
3	will that give you a little bit more comfort?  The problem is
4	as you know this is a complicated case and we have now had
5	three attorneys get up to speed on it.  As a result, I don't
6	want to bring in someone new that has already been done again.
7	I am willing to put off those case and ensure that Mr. Levine
8	comes to see you and that you have enough time to talk about
9	the issues that you have so everything can be raised before me.
10	I am also willing to put off your sentencing date.
11	THE DEFENDANT:  Your Honor, it seems to me he has no
12	interest in my case.  He hasn't came and told me anything about
13	my case at all since he has been appointed my attorney.  He did
14	come to see me twice at 6:30 in the evening knowing that he had
15	to leave at 7:30, which I discussed issues with him; but he
16	hasn't told me anything in regards to my case.  I don't know
17	what he has done, or if he has even looked into my case.
18	As far as these attorney appointments go, my first
19	attorneys -- one attorney tells me to fire the other attorney.
20	My second attorney, Mr. de Castro, goes to court and says, Oh,
21	we're going to have no defense -- a strategy of no defense and
22	we're going to win on appeal and then he quits before appeal.
23	So I am asking:  What is going on here?
24	THE COURT:  Mr. Levine, do you want to be heard at
25	all?

1          MR. LEVINE:  Judge, I visited Mr. Hunter twice.  I
2   think one time was in the evening where I got in late.  I don't
3   know.  I forget what the situation was, but I think it was the
4   jail.  The warden brought him down late.  I did saw him one
5   other time and it is not in the evening.
6          I have been going through the file.  I was on trial in
7   the Eastern District recently.  I thought the trial would be
8   over on Monday, but it didn't end until late Tuesday afternoon.
9   I was planning to see him Tuesday morning, but I received a
10  message from him Monday not to go see him and asked for a
11  change of counsel.  So I am still going through things.
12         THE COURT:  I have two questions.  One, how much time
13  and energy have you put into this case?  The reason I ask that
14  to see if I were to appoint a new attorney what the extent of
15  wasted resources there.  Number two, do you feel like relations
16  have broken down to such an extent that you cannot represent
17  Mr. Hunter?  It seems like you haven't seem him so I don't know
18  that they have broken down to that extent.
19         MR. LEVINE:  Well, I have seen him a couple times.
20         THE COURT:  I should have said recently.
21         MR. LEVINE:  As you know this is posttrial.  It is not
22  preparing for a trial.  This is things I need to go over,
23  things that have already been done for the most part in order
24  to get up to speed and see if there is a motion to be filed and
25  what it will contain, which is separate and apart from doing an

Case 1:13-cr-00521-RA   Document 657   Filed 11/09/18   Page 6 of 12      6
IAA6HUNC

1    appeal.
2             I think I explained to him that I don't want to do a
3    Rule 33 motion, as that is rehashing motions that have already
4    been laid out to the Court and decided by this Court.  I think
5    the likelihood to get you to change your mind on those issues
6    without new evidence is slim.  My plan was not to bring out
7    everything that had been done here again, but to see if there
8    is anything new and otherwise to look forward to the appeal as
9    the primary resource.
10            In terms of how many hours I put in, I noticed that
11   Mr. --
12            THE COURT:  Gerschwer.
13            MR. LEVINE:  -- Gerschwer, has a Fried Frank email
14   address and certainly has more resources than I do and more
15   people at his disposal than I do.  I put in so far 40ish -- 50
16   to 50 hours going through things, reading through transcripts,
17   finding motions, going through docket sheet, looking to see if
18   there were responses to certain things that were filed.  It was
19   hard to figure out whether Mr. de Castro had responded to the
20   Government's 404(b) motion.  Going through things and printing
21   everything out has taken a while.
22            I did just in case you did appoint him since
23   Mr. Gerschwer was CC'd on the emails, I copied everything I
24   have except for the hard drive that Mr. de Castro had sent me
25   through Dropbox onto this flash drive to give to Mr. Gerschwer.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    I am fine with continuing on the case, continuing the
2    work, continuing to get through the record and see what issues
3    should be raised, if any, in Rule 33 in addition to what Mr. de
4    Castro has done. It is clear to me from himself and emails
5    from his sister that he is not pleased with me. So I certainly
6    have no vested interest in imposing myself on Mr. Hunter if he
7    didn't want me, but I am happy to stay on the case if your
8    Honor wishes.

9    THE COURT: Mr. Hunter, I will say that Mr. Levine
10   makes a good point in the sense that posttrial things are
11   different than they are when you are preparing for trial in
12   terms of the amount of time you need to spend with someone.
13   What he needs to do is look at the record. Obviously he needs
14   to meet with you as well to get your input, but he really needs
15   to look at the record and see if I can identify any errors that
16   need to be raised before me and/or ultimately on appeal.

17   Is there anything else you want to say today?

18   THE DEFENDANT: It is just my issues are in reference
19   to the record; but if he doesn't come and talk to me, how --
20   how am I going to bring those up?

21   THE COURT: If I do grant an adjournment and ensure
22   that he comes to talk to you, do you think that you can work
23   with him at this point?

24   THE DEFENDANT: As I said, your Honor, I don't know
25   what he has done. The very first day I asked him to get my

1   property returned.  I don't think he has even done that.  He
2   hasn't worked on that.  I have been asking for this for over
3   three years.  I sent a letter to Judge Swain over like a year
4   and a half ago when it was supposed to be worked on and it
5   still wasn't worked on by Mr. Kirton and it wasn't worked on by
6   Mr. de Castro for nine months and hasn't been worked on by Mr.
7   Levine for three months.  So I don't understand any of this.
8            MR. LEVINE:  Judge, update on that.  Unfortunately I
9   did inform Mr. Hunter that a 41(g) motion has to be made for
10  the return of the property and unfortunately it looks to me
11  that according to the rule, the motion has to be made where the
12  property was seized, which is in Kentucky.  I cannot even bring
13  it here.  I am not admitted in Kentucky and I would have to
14  find out through David Patton or somebody else how I could find
15  a CJA lawyer or federal defenders in Kentucky that would file a
16  motion in Kentucky that is not even pending there yet.  It is
17  something that --
18           THE COURT:  It is something that can be done?
19           MR. LEVINE:  It seems there is something that can be
20  done; but it is just that not something that can be done here.
21  I don't know exactly what I can do because I am here and not in
22  Kentucky.  I can certainly ask Mr. Patton.
23           THE COURT:  Do exactly what you suggested, ask
24  Mr. Patton and maybe he can assist.
25           Is there anything the government can do with respect

1    to Mr. Hunter's property?

2             MS. DONALESKI:  I don't and defense counsel hasn't

3    reached out to us.  I am happy to talk to Mr. Levine about the

4    issue and see what we can do.

5             THE DEFENDANT:  Your Honor, my both prior counsels

6    reached out to the government and they received several emails

7    and this has been discussed with them personally all the way

8    back in March 2016.  I was present at that discussion.

9             MR. LEVINE:  My understanding from Mr. de Castro is he

10   tried reaching out to the government.

11            THE COURT:  First thing, Ms. Donaleski, I will ask you

12   to look into the property issue.  Maybe we can avoid some

13   unnecessary litigation.  If you can write me -- and I will

14   figure out the counsel issue in a minute -- and counsel a

15   letter, let's say, a week from tomorrow and let us know what

16   the status of that is, if there is any objection to releasing

17   certain property.  I don't know what may be evidence, what may

18   not be.  But let us know that next Friday.

19            Do you have a position with respect to Mr. Hunter's

20   counsel?

21            MS. DONALESKI:  We don't, your Honor.

22            THE COURT:  Mr. Hunter, look, we'll focus on the

23   property issue.  I think everyone here can work a little harder

24   to focus on that.  The question is if you get new attorney,

25   someone knew needs to get up to speed on everything and the

1    motions are going to take longer and alike and Mr. Levine has

2    indicated that he is willing to come see you and to talk about

3    these issues before he files any supplemental briefing and as I

4    said I am willing as well to extend the dates to do that.  I

5    know you are frustrated with him, but he has been on trial and

6    lawyers get busy.

7            In light of the fact I am willing to put off those

8    dates, do you feel like things have broken down with him to

9    such an extent that you cannot work with him as your attorney?

10           THE DEFENDANT:  Things haven't broken down, your

11   Honor.  I haven't seen him.

12           THE COURT:  Mr. Levine, I am going to ask you to go

13   see Mr. Hunter.

14           I am not going to appoint you, Mr. Gerschwer, today to

15   replace Mr. Levine; but I want to thank you for coming today.

16           Mr. Levine, please go see Mr. Hunter and spend as much

17   time with him as you and he feel like you need.  There is a lot

18   of history to this case as I am sure you know, and I think it

19   is important for him to represent to you all the areas that he

20   thinks need attention and then you can work with him on what

21   may be a viable legal issue to raise at this point.

22           How much time do you think you need to file any

23   supplemental briefs?  I will say I don't see any reason I

24   cannot decide the pending motion, the Rule 3329 motion, that is

25   based on jurisdictional grounds and you can raise any

1  additional issues you would like to raise and as I said I will
2  give you time to do that.
3          What would you propose?  How much time do you need to
4  give you the time that you need to spend with Mr. Hunter and
5  then to make the motions?
6          MR. LEVINE:  I would say about two months, Judge.
7          THE COURT:  Two months.  I am going to give you an
8  additional two months, but I want you to go see him within a
9  week.
10         MR. LEVINE:  I will see him next week.  As I think I
11 noted in my letter to your Honor saying I was available this
12 morning, but I have I flight this afternoon.  I will be back
13 Sunday night.  I can see him next week.
14         THE COURT:  Let me just look at the calendar.
15         I will give you until December 14th.  Again, I am
16 still going to consider the pending motion, but I will give you
17 until December 14th to file any supplemental motions you may
18 have before me.  I will give the government until January 18th
19 to respond and then you will have until the 28th for any reply.
20         I am going to go put off Mr. Hunter's sentencing as a
21 result until February 15th at 11:30.
22         I am going to get the letter from the government with
23 respect to the property issue next Friday.
24         Mr. Levine, you are going to go see Mr. Hunter next
25 week.  You have the two months to file any motions that you

1  think are appropriate, and then I will address the pending
2  motion before me.
3              Anything else that we need to discuss today?
4              MS. DONALESKI:  Not from the government, your Honor.
5              MR. LEVINE:  No, your Honor.  Thank you.
6              THE COURT:  Thanks again, Mr. Gerschwer.
7              MR. GERSCHWER:  You are welcome, your Honor.
8                                o0o